

RECEIVED
JUN 0 6 2013
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

Federal Deposit Insurance Corporation as
Receiver for AmTrust Bank,

    Plaintiff,

v.

St. Louis Title, LLC,

    Defendant.

Case No.
Honorable

## COMPLAINT

Plaintiff Federal Deposit Insurance Corporation as Receiver for AmTrust Bank ("FDIC-R") for its Complaint against Defendant St. Louis Title, LLC states as follows:

### PARTIES

1.    The Federal Deposit Insurance Corporation ("FDIC") is a corporation organized and existing under the laws of the United States of America. Under the Federal Deposit Insurance Act ("FDIA"), the FDIC is authorized to be appointed as receiver for failed insured depository institutions. AmTrust Bank ("AmTrust") was a federally chartered savings bank with its principal place of business in Cleveland, Ohio. On December 4, 2009, AmTrust was closed by the Office of Thrift Supervision and the FDIC was appointed as Receiver pursuant to 12 U.S.C. § 1464(d)(2)(A) and 12 U.S.C. § 1821(c)(5). Under the FDIA, the FDIC as receiver succeeds to all claims held by banks for which it is the receiver. 12 U.S.C. § 1821(d)(2)(A)(i). Plaintiff owns the subject claims and has standing to prosecute this action as Receiver for AmTrust.

2. Defendant St. Louis Title, LLC ("St. Louis Title") is a Missouri company with its principal place of business located in St. Louis, Missouri. St. Louis Title provided closing and escrow services in connection with the transaction at issue in this Complaint.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 12 U.S.C. § 1819(b)(2)(A), because the FDIC-R is a party and therefore this controversy arises under the laws of the United States.

4. This Court has general personal jurisdiction over Defendant St. Louis Title because it is a Missouri corporation.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## THE OHIO LITIGATION

6. FDIC-R filed a complaint against St. Louis Title and others arising out of the transaction at issue in this Complaint in the Northern District of Ohio on December 3, 2012 (the "Ohio Litigation"). FDIC-R filed and an amended complaint on March 4, 2013. *See* N.D. Ohio case no. 12-cv-02969.

7. St. Louis Title brought a motion to dismiss FDIC-R's action, arguing that personal jurisdiction was lacking and that Ohio was not the proper venue for FDIC-R's claims. St. Louis Title's motion to dismiss was granted on May 29, 2013 on the grounds of lack of personal jurisdiction.

8. FDIC-R now brings its claims against St. Louis Title arising out of the transaction at issue in this Complaint before this Court.

## FACTUAL BACKGROUND

9. AmTrust focused a core portion of its business on mortgage banking. Mortgage banking involves the acquisition (purchase or origination), sale and securitization, and servicing of mortgage loans.

10. Community Lending Services, Inc. ("Community Lending") was at all times pertinent to this Complaint a mortgage broker incorporated in Missouri with its principal place of business located in Missouri. Community Lending provided mortgage origination services pursuant to a Master Correspondent Loan Purchase Agreement with AmTrust in connection with the transaction at issue in this Complaint.

11. This action arises out a mortgage loan originated by Community Lending and submitted to AmTrust for funding. At all times pertinent to this Complaint, Community Lending was an independent mortgage broker, and at no time did AmTrust have a partnership, agency, and/or employment relationship with Community Lending.

12. Through Community Lending, Stacy Robnett (the "Borrower") applied for a mortgage loan to finance the purchase of real property located at 1635 Washington Avenue, Unit 912, St. Louis, Missouri (the "Property"). Community Lending submitted the Borrower's loan application and supporting documents to AmTrust for the purpose of securing mortgage financing from AmTrust for the Borrower's purchase of the Property.

13. At the time of the Borrower's loan application, the Borrower was married to David Robnett. David Robnett had at times been an officer of Community Lending, and upon information and belief, David Robnett was an employee or agent of Community Lending when the subject loan to the Borrower was originated by Community Lending.

14. On or about December 14, 2007, AmTrust financed 75 percent of the represented $798,858 purchase price with a $599,000 mortgage loan to the Borrower (the "Loan").

15. Because AmTrust approved the Loan with a maximum combined loan-to-value ratio ("CLTV") of 75 percent, AmTrust was made to believe that the Borrower would pay the property seller approximately $200,000 to close the $798,858 purchase transaction. AmTrust did not approve of any subordinate financing.

16. AmTrust agreed to fund only 75 percent of the purported purchase price in order to ensure that AmTrust had an equity cushion in case the Borrower defaulted on her loan obligations and AmTrust was forced to foreclose and liquidate the Property. AmTrust required that the Borrower pay the remaining purchase price with her own funds because borrowers who provide downpayments with their own funds are likely to do whatever they can to avoid defaulting on their loan obligations (or risk losing their downpayment).

17. Defendant St. Louis Title performed closing and escrow services in connection with the subject mortgage loan transaction described herein. St. Louis Title's employees and/or agents witnessed and notarized closing documents and presided over the subject closing.

18. AmTrust was listed as the lender on the HUD-1 settlement statement ("HUD-1") for the subject transaction, and St. Louis Title was required to forward the original closing package to AmTrust.

19. AmTrust provided St. Louis Title with detailed written closing instructions and related documents for the subject transaction (the "Closing Instructions"). "Closing

4

Instructions AmTrust Bank Wholesale" was printed at the bottom of each page of the Closing Instructions. St. Louis Title was at all times aware that the Closing Instructions had been prepared by AmTrust and St. Louis Title's obligations under the Closing Instructions were intended for AmTrust's benefit.

20. St. Louis Title had no authority to close the subject mortgage loan transaction or disburse AmTrust's funds unless St. Louis Title fully complied with all of the Closing Instructions.

21. The Closing Instructions required St. Louis Title to certify that all closing conditions stipulated to in the Closing Instructions were satisfied by St. Louis Title prior to disbursement of AmTrust's funds.

22. The Closing Instructions provided that "[n]o seller paid costs, secondary financing, or third party contributions are allowed unless specifically authorized in the Supplemental Closing Instructions." AmTrust's Supplemental Closing Instructions did not authorize any such payments or contributions to be made on the Borrower's behalf.

23. The Closing Instructions further required St. Louis Title to halt the closing proceedings and immediately contact AmTrust if St. Louis Title or its employees or agents observed:

> **Payoffs other than to clear title:** If funds are to be disbursed for any reason other than (i) to individuals or entities specifically mentioned in the Sales Contract, (ii) to pay off or otherwise insure [sic] that Lender has a first and superior deed of trust or mortgage lien, . . . (iii) to pay fees paid to individuals or entities that are customary and or prevalent for standard mortgage lending transactions, (iv) to pay off legitimate mechanics or materials lines [sic], tax liens or judgment liens or (v) to pay down or off creditors of the Borrower required to satisfy underwriting conditions.

24. The Closing Instructions for the subject transaction further provided, *inter alia*, that:

    a.    "Lender is relying on [St. Louis Title] to communicate to Lender any material fact known or suspected which may arise during or out of the closing and settlement process."

b. St. Louis Title is "to alert Lender to facts and events that might affect Lender's decision to make the loan . . . [including, but not limited to] "changes to the sales contract. . . ."

c. "If [St. Louis Title] has knowledge that there is, or will be, any secondary financing not set forth in the Supplemental Closing Instructions placed on the property, or that any monies Borrower is required to pay or deposit at closing are not from the Borrower's own funds or a bona fide gift, [St. Louis Title] shall suspend loan closing and immediately notify Lender."

d. "If there are material or significant changes to the sales price or the escrow, Lender must approve the same prior to closing. [St. Louis Title] must confirm the sales price on the contract matches the sales price on the HUD-1 Settlement Statement."

e. "[St. Louis Title] must not make disbursements from the loan proceeds unless they are specifically authorized by [the Closing Instructions]."

f. "[St. Louis Title] shall immediately stop the closing and notify Lender of any request for unusual payments to be disbursed from the proceeds of the loan, whether listed on the HUD Settlement Statement or not."

    25.    After AmTrust's loan funds were disbursed by St. Louis Title, St. Louis Title forwarded AmTrust a HUD-1 for the subject transaction. This HUD-1 showed that the Borrower was only required to pay $191.36 to close the subject transaction because a

6

$16,000 earnest money deposit was purportedly paid by the Borrower to the property seller (1641 Washington, LLC, formerly known as Jacob Development Group, LLC) and a $200,000 deposit was purportedly paid by the Borrower to "Expert Contracting." Expert Contracting was a fictitious name for the Borrower's then husband David Robnett.

26. AmTrust's Closing Instructions did not approve of a payment to Expert Contracting (or any other third party) prior to funding, and the Property had been represented to AmTrust as being complete (and worth $800,000). Upon information and belief, the Borrower did not pay $200,000 to her husband's company as detailed on the HUD-1 prepared by St. Louis Title.

27. The Borrower defaulted on the Loan soon after funding, and Plaintiff incurred a substantial loss as a result.

28. AmTrust received a hardship letter from the Borrower on October 28, 2008. AmTrust subsequently entered in a loan modification with the Borrower. The Borrower made only 32 total payments on the Loan before ultimately defaulting. AmTrust obtained Lender Placed Insurance for the Property on July 1, 2010. Upon default FDIC-R began a review of the Loan and discovered the defects in the loan transaction as well as Community Lending's and Defendant St. Louis Title's potential liability for the losses that resulted from these defects.

29. This review of the Loan confirmed that loan information submitted by Community Lending regarding the purchase price of the Property, CLTV for the Loan, and the source of the Borrower's downpayment was not complete, true, and correct.

30. St. Louis Title's closing file for the subject transaction contains documents that show that the purchase price of the Property had been misrepresented to AmTrust. St.

Louis Title's file contains two versions of purchase agreements for the Property that were not disclosed to AmTrust.

31. One undisclosed version of the purchase agreement lists David Robnett as the buyer, with a purchase price of $488,858. This undisclosed version of the purchase agreement is dated May 31, 2007 (after the purchase agreement submitted to AmTrust). Another undisclosed version of the purchase agreement lists the Borrower as the buyer. This undisclosed version of the purchase agreement is dated May 31, 2007 (after the purchase agreement submitted to AmTrust), and lists the purchase price as $473,858 – not $798,858.

32. Upon information and belief, $473,858 was the true price agreed to by the Borrower. As a result of this true purchase price, the CLTV for the Loan was actually 126 percent, which exceeded AmTrust's guidelines for residential mortgage loans. AmTrust would not have funded the Loan had it known of the true purchase price for the Property.

33. St. Louis Title's closing file also contains a contract dated May 8, 2007 between the property seller and "Expert Lenders, Inc. doing business as Expert Construction" that was not disclosed to AmTrust. This undisclosed contract states that Expert Lenders, Inc. would be paid $262,000 for providing basic contracting services and materials relating to the Property. David Robnett signed the contract on behalf of "Expert Lenders, Inc."

34. Upon information and belief, "Expert Lenders, Inc." did not exist in May 2007. David Robnett organized a company called "Expert Lenders, LLC" later, in July 2007. Upon information and belief, the company "Expert Contracting" listed on the HUD-1 prepared by St. Louis Title and the company "Expert Lenders, Inc" listed on the

8

undisclosed contract with the seller were really David Robnett's company Expert Lenders, LLC.

35. Upon information and belief, the services that "Expert Lenders, Inc." was to be paid $262,000 for were not necessary or actually performed, and the $798,858 purchase price represented to AmTrust was fabricated in order to increase the amount AmTrust was willing to loan.

36. Upon further information and belief, the property seller advanced the earnest money deposit funds listed on the HUD-1 prepared by St. Louis Title. St. Louis Title's closing file shows that Jacob Development Group, LLC issued a $16,000 check to St. Louis Title in order to close the subject transaction.

37. Moreover, St. Louis Title disbursed $123,400 to Expert Contracting (David Robnett of Community Lending). AmTrust did not authorize this disbursement. Expert Contracting was not mentioned in the purchase agreements submitted to AmTrust, and this disbursement was not necessary to give AmTrust a first lien. Further, Expert Contracting did not have a lien on the Property. The disbursement to Expert Contracting did not represent a fee customarily paid in standard mortgage lending transactions, and the fees were not required to be paid in order to satisfy AmTrust's underwriting conditions.

38. St. Louis Title failed to comply with the Closing Instructions in closing the subject transaction without notifying AmTrust of the matters outlined above. Consequently, St. Louis Title was not authorized to close the Loan.

### COUNT I: BREACH OF CONTRACT BY ST. LOUIS TITLE

39. Plaintiff FDIC-R incorporates the preceding paragraphs of this Complaint herein by reference.

40. St. Louis Title entered into a contractual relationship with AmTrust that is set forth in the Closing Instructions.

41. The Closing Instructions were in the possession of, or at all times available to, St. Louis Title, and all of the terms and conditions set forth in the Closing Instructions are incorporated herein by reference.

42. In serving as AmTrust's closing agent, St. Louis Title assumed and owed AmTrust a duty to strictly comply with all of the terms of the Closing Instructions. Defendant St. Louis Title violated the parties' agreement by failing to close the subject transaction in accordance with the Closing Instructions.

43. AmTrust performed and completed all of its obligations owed to St. Louis Title as required, except as to any acts or obligations AmTrust was excused from performing by the breach of St. Louis Title.

44. AmTrust reasonably relied upon St. Louis Title's agreement to comply with the Closing Instructions in deciding whether to fund the Loan.

45. St. Louis Title's breach of the Closing Instructions caused AmTrust to fund a mortgage loan that it otherwise would not have funded. Plaintiff has suffered a loss as a result of Defendant St. Louis Title's breach of the Closing Instructions.

### COUNT II: NEGLIGENCE BY ST. LOUIS TITLE

46. Plaintiff FDIC-R incorporates the preceding paragraphs of this Complaint herein by reference.

47. St. Louis Title performed title, closing, and escrow services for AmTrust in connection with the mortgage loan transaction enumerated herein. St. Louis Title was required to perform these services with reasonable care.

48. St. Louis Title's duties as a title agent, closing agent, and escrow agent are defined by federal, state, and common law. St. Louis Title's duties and obligations are further defined by industry standards and AmTrust's instructions to St. Louis Title. St. Louis Title breached these duties when it failed to perform services in a manner consistent with federal, state, and common law; industry standards; and AmTrust's instructions to St. Louis Title.

49. St. Louis Title's negligent performance caused AmTrust to fund a mortgage loan that it would not have otherwise funded. Plaintiff has been damaged as a result of St. Louis Title's negligence.

## COUNT III: NEGLIGENT MISREPRESENTATION BY ST. LOUIS TITLE

50. Plaintiff FDIC-R incorporates the preceding paragraphs of this Complaint herein by reference.

51. St. Louis Title performed services and provided information to AmTrust in connection with the mortgage loan transaction enumerated herein.

52. St. Louis Title owed AmTrust a duty to provide complete and accurate information. St. Louis Title is obligated under federal law to provide accurate and complete information in connection with a mortgage application. St. Louis Title's duties further arise under common law.

53. St. Louis Title breached its duties when it provided inaccurate and/or misleading information and/or when it failed to disclose information and/or omitted information.

54. St. Louis Title's misrepresentations and/or omissions regarding the source of the Borrower's downpayments, the sales price for the Property, and the true nature of

11

the subject transaction induced AmTrust to fund a mortgage loan transaction that it would not have otherwise funded. Plaintiff has been damaged as a result of Defendant St. Louis Title's negligent misrepresentations and/or omissions.

## RELIEF REQUESTED

WHEREFORE, Plaintiff FDIC-R respectfully requests that:

A. The Court find Defendant St. Louis Title liable for its breach of contract, and enter judgment for any and all remedies available under the contract or by operation of law including without limitation; damages, attorney's fees, costs, expenses, interest, and other such relief the Court may deem appropriate under the circumstances.

B. The Court find Defendant St. Louis Title liable for its negligence and negligent misrepresentation, and enter judgment for compensatory damages, consequential and incidental damages, attorney's fees and costs, interest and other such relief as the Court may deem appropriate under the circumstances;

C. The Court award costs and disbursements and order such other and further relief, including equitable relief, that is just and proper.

Respectfully submitted,

**RJ LANDAU PARTNERS PLLC**

By: _____
Richard J. Landau
Attorneys for Plaintiff, the Federal
Deposit Insurance Corporation as
Receiver for AmTrust Bank
5340 Plymouth Rd., Suite 200
Ann Arbor, MI 48105
(734) 865-1585

Date: June 5, 2013